In the
United States Court of Appeals
For the Seventh Circuit

No. 00-2156

Jeffrey N. LaBonte,

Plaintiff-Appellant,

v.

United States of America,

Defendant-Appellee.

Appeal from the United States District Court
for the Eastern District of Wisconsin.
No. 99 C 1129--Thomas J. Curran, Judge.

Argued October 24, 2000--Decided December 7,
2000

Before Flaum, Chief Judge, and Manion and
Evans, Circuit Judges.

Manion, Circuit Judge.  The Internal
Revenue Service levied property owned by
the plaintiff, Jeffrey LaBonte. Twenty
months later, LaBonte filed a wrongful
levy action against the IRS pursuant to
26 U.S.C. sec. 7426(a)(1). The IRS moved
to dismiss LaBonte's complaint for lack
of subject matter jurisdiction because
LaBonte did not file suit within the
nine-month period required for wrongful
levy actions under 26 U.S.C. sec.
6532(c)(1) and thus the government's
sovereign immunity had not been waived.
The district court granted the IRS'
motion to dismiss, and LaBonte appeals.
We affirm.

I.  Facts

   In 1991, Jeffrey LaBonte entered into a
contract to purchase from his mother,
Bernice LaBonte, a one-fifth interest in
land she owned in East Troy, Wisconsin.
In 1996, the IRS assessed LaBonte's
mother and father for income tax
deficiencies of $1,388,844 for the
taxable years ending in 1981 and 1983.
The IRS took no action against Jeffrey

LaBonte and there is no suggestion that he had any responsibility for his parents' tax deficiency. On October 18, 1996, the IRS filed a Notice of Federal Tax Lien against LaBonte's parents stating that the United States had a lien on all of their property.

LaBonte, assisting his parents, contacted the IRS to discuss how to obtain a discharge of the lien so that the Wisconsin property could be sold. IRS Agent Dale Veer instructed him how to do so, and on August 20, 1997, LaBonte's parents executed an Application for Discharge. Two days later, LaBonte and his mother sold their interests in the Wisconsin property for a total price of $1,275,000. The IRS received $800,000 from the net proceeds in payment towards the Federal Tax Lien. Because of his one-fifth interest in the property, LaBonte laid claim to 20% of the proceeds of the sale. The IRS disputed his claim. Thus the remaining proceeds, $124,878, were placed in escrow with All American Land Services, Inc. pending a determination as to LaBonte's entitlement thereto. The IRS then executed a Certificate of Discharge of Property from Federal Tax Lien acknowledging receipt of the $800,000 and discharging the Wisconsin property from the lien, reserving the lien against all other property to which the lien had attached.

On January 20, 1998, the IRS served a Notice of Levy on All American for the remaining sale proceeds. On October 2, 1998, LaBonte's attorney sent a letter to the IRS, which was addressed to:

VIS [sic] FACSIMILE AND U.S. MAIL
FAX NO. 297-1190
Revenue Officer Dale R. Veer
Special Procedures/Advisory
310 W. Wisconsin Avenue
Milwaukee, WI 53201-2221
The letter also set forth LaBonte's name and address, a description of the balance of the sales proceeds located in escrow, a description of LaBonte's claim to a priority interest in the proceeds and a request for the "issuance by the District Director of a Certificate of Discharge under Sec. 6325 of $100,000 of the Escrowed Proceeds and the Director's authorization for All American Land Services, Inc. to release such amount to [LaBonte]."

Negotiations continued between the IRS, represented by Agent Veer and District Counsel James Klein, and LaBonte and his attorneys until September 22, 1999 when the negotiations failed and LaBonte filed the present wrongful levy action under Section 7426(a)(1).

II.  Analysis

The United States government may be sued only where Congress has waived its sovereign immunity and the existence of such waiver is a "prerequisite for jurisdiction." Kuznitsky v. United States, 17 F.3d 1029, 1031 (7th Cir. 1994) (quoting United States v. Mitchell, 463 U.S. 206, 212 (1983)). The government may attach conditions to its waiver and when "waiver legislation contains a statute of limitations, the limitations provision constitutes a condition on the waiver of sovereign immunity." Block v. North Dakota, 461 U.S. 273, 287 (1983). When Congress attaches such conditions, they "must be strictly observed, and exceptions thereto are not to be lightly implied." Id. Cf. Bartley v. United States, 123 F.3d 466, 467-68 (7th Cir. 1997) (unless taxpayer files proper claim with the IRS, a court lacks subject matter jurisdiction over a suit for refund).

Congress has provided for a waiver of sovereign immunity in cases where a claimant seeks the return of property seized to satisfy the tax liability of another. 26 U.S.C. sec. 7426(a)(1). One of the conditions Congress specified in waiving its immunity is that the claimant must file his wrongful levy action within nine months from the date of levy. 26 U.S.C. sec. 6532(c)(1). However, Congress also included an exception to this nine-month period: if the claimant properly files a written request for the return of levied property with the IRS, then the period for filing is extended to the shorter of twelve months from the date of filing the administrative request or six months from the date the IRS mails a notice of disallowance. 26 U.S.C. sec. 6532(c)(2).

There is no dispute that LaBonte did not file suit within nine months of the date of levy, as the property was levied on January 20, 1998 and he did not file suit

until September 22, 1999. However, he claims that he is entitled to the time extension authorized by Section 6532(c)(2), arguing that his October 2, 1998 letter mailed to the IRS constituted a proper request for return of property. The district court did not agree with LaBonte's argument. Accordingly, since the conditions for waiver of sovereign immunity had not been fulfilled, the district court concluded that it lacked subject matter jurisdiction over the case. We review the district court's dismissal of a complaint for lack of subject matter jurisdiction de novo. Maas v. United States, 94 F.3d 291, 294 (7th Cir. 1996).

In order to qualify for the exception under Section 6532(c) (2), the claimant must satisfy the specific requirements for a proper written request as set forth by 26 C.F.R. sec. 301.6343-2. The request must be "addressed to the district director (marked for the attention of the Chief, Special Procedures Staff) for the Internal Revenue district in which the levy was made." 26 C.F.R. sec. 301.6343-2(b). The request must also contain certain specific information, including (1) the name and address of the person submitting the request; (2) a detailed description of the property levied upon; (3) a description of the claimant's basis for claiming an interest in the property levied upon; (4) the name and address of the taxpayer, the originating Internal Revenue district and the date of the levy. See 26 C.F.R. sec. 301.6343-2(b)(1)-(4). If the written request does not contain the proper information, it will still be considered an adequate written request "unless a notification is mailed by the director to the claimant within 30 days of receipt of the request to inform the claimant of the inadequacies . . . ." 26 C.F.R. sec. 301.6343-2(c).

In this case, LaBonte addressed his October 2, 1998 letter to Revenue Officer Dale R. Veer, Special Procedures/Advisory. Thus, he failed to conform with Section 301.6343-2(b) which clearly requires that the request be "addressed to the district director (marked for the attention of the Chief, Special Procedures Staff)." If the claimant fails to address his request to the district director as required by the

regulations, he may not take advantage of the twelve-month extension. See Amwest Surety Insurance Co. v. United States, 28 F.3d 690, 697 (7th Cir. 1994). In Amwest, a claimant addressed its written request to the revenue officer in charge of the case. The claimant and the IRS then engaged in some limited discussion regarding the levied property before the claimant filed its lawsuit. Because the lawsuit was not filed within nine months of the levy, the claimant sought an extension. We concluded that Amwest did not qualify for the extension, and therefore the district court lacked subject matter jurisdiction, because the regulations clearly require that the request be sent to the district director and Amwest's "letters were not sent to the proper party and consequently did not constitute a 'written request for the return of property' pursuant to sec. 6532(c)(2)." Amwest, 28 F.3d at 696.

LaBonte argues that, unlike the request in Amwest, he did not address his letter to a revenue agent but rather to an agent of the Special Advisory Procedures Staff, thereby complying with the regulations which require the request to be addressed "marked for the attention of the Chief, Special Procedures Staff." In addition, LaBonte points out that his letter was sent to the exact same address and fax number as the district director, and that it contained a specific request that the "district director" grant him a discharge of the escrowed proceeds. LaBonte may have had good reason to hope that his plea would eventually reach the attention of the district director. Nevertheless, LaBonte did not address his letter to the district director, marked to the attention of the Chief of the Special Procedures Staff, as specifically required by the plain language of Section 301.6343-2(b). We recognize, as we did in Amwest, that this strict application of the regulations seems harsh and we can "think of no legitimate reason . . . why [the IRS] would continue negotiating with [LaBonte] without at least telling [him] that [his] request should be directed to the district director." Amwest, 28 F.3d at 698. As the district court noted during its hearing, we are especially hard-pressed to explain the IRS' behavior in light of its recent efforts to improve its image in the eyes of a skeptical public. However, the conditions waiving

sovereign immunity "must be strictly observed." Block, 461 U.S. at 287. Accordingly, because LaBonte's letter was addressed to the wrong party, it does not constitute a proper request under Section 6532(c)(2) and his untimely suit was properly dismissed for lack of subject matter jurisdiction./1

LaBonte argues that the IRS should be equitably estopped from claiming that he did not meet all the conditions for a waiver of sovereign immunity. He argues that the IRS representatives' prolonged negotiations with him, including their apparent authority to conduct settlement discussions, and the fact that they never advised him that he had filed an improper written request led him to believe that he had filed a proper request and that the proper officials at the IRS had assumed control of the matter. In response, the government argues that, because the statute of limitations is a jurisdictional bar rather than an affirmative defense, equitable estoppel is not allowed in wrongful levy actions. See, e.g., Becton Dickinson & Co. v. Wolckenhauer, 215 F.3d 340, 348-54 (3d Cir. 2000) (barring application of equitable tolling in wrongful levy action).

The Seventh Circuit has not yet decided whether the doctrine of equitable estoppel may ever be invoked in wrongful levy actions. Cf. Flight Attendants Against UAL Offset (FAAUO) v. Commissioner, 165 F.3d 572, 577 (7th Cir. 1999) (declining to decide whether the doctrine of equitable tolling could be invoked in a tax case). Likewise, we need not do so today because LaBonte fails to establish the elements of equitable estoppel, particularly affirmative misconduct by the government.

Equitable estoppel "allows delay in suing when the defendant, in this case the IRS, has taken steps to prevent the plaintiff from suing in time." Id. at 575. Typically, the traditional elements of equitable estoppel are: (1) misrepresentation by the party against whom estoppel is asserted; (2) reasonable reliance on that misrepresentation by the party asserting estoppel; and (3) detriment to the party asserting estoppel. Kennedy v. United States, 965 F.2d 413, 417 (7th Cir. 1992). However,

in suits against the government, one must also establish affirmative misconduct on the part of the government. Id.; Gibson v. West, 201 F.3d 990, 994 (7th Cir. 2000). Affirmative misconduct is "more than mere negligence. . . . It requires an affirmative act to misrepresent or mislead." Gibson, 201 F.3d at 994 (internal citations omitted).

Here, the IRS levied on the property on January 20, 1998. In order to satisfy the conditions for a waiver of sovereign immunity, LaBonte needed to file his wrongful levy action or submit a proper written request to the IRS before October 20, 1998. Almost the full nine-month period of limitations had passed before LaBonte sent his inadequate letter on October 2, 1998. Thereafter, negotiations began and the statute of limitations ran a mere twenty days later. There is no allegation that the IRS representatives affirmatively misled LaBonte by telling him that he had filed a proper written request under Section 6532(c)(2). Given the short time period between the receipt of the letter and the expiration of the nine-month time period, we do not believe that Agent Veer and District Counsel Klein committed affirmative misconduct by their failure to advise LaBonte that he was about to miss the filing deadline. In fact there is no indication in the October 2, 1998 letter that it was intended to do anything more than negotiate a settlement. The letter makes no reference to the statute or to the regulations governing wrongful levies. Even if the letter arguably met minimal standards, the government's failure to advise LaBonte of the statute of limitations "is an omission that at most amounts to ordinary negligence. . . . Indeed, . . . a government's failure to discharge an affirmative obligation is not the same as engaging in affirmative misconduct." Id. (internal quotations omitted). After October 20, 1998, the IRS' continued participation in negotiations could not have prevented LaBonte from filing a timely lawsuit because the nine-month period had expired. Thus, those negotiations cannot be the basis of equitable estoppel.

III.    Conclusion

In sum, Congress has waived the government's sovereign immunity in wrongful levy actions if a claimant files

suit within nine months from the date of levy. See 26 U.S.C. sec. 6532(c)(1). Because LaBonte did not file his action until twenty months after the date of levy, his action is time- barred. LaBonte may not take advantage of the statutory exception which extends the statute of limitations because he did not file a proper written request for the return of property pursuant to 26 C.F.R. sec. 301.6343-2(b). Lastly, LaBonte cannot establish all the elements of equitable estoppel. Accordingly, we affirm the judgment of the district court.

/1 The IRS also argues that LaBonte's October 2, 1998 letter was not a proper request for the return of property because it did not contain all of the information required under Section 301.6-343-2(b)(1)-(4). LaBonte responds that the regulations required the district director to inform the claimant of the inadequacies, which it failed to do. See 26 C.F.R. sec. 301.6343-2(c). However, because the written request was improperly addressed, we need not decide if it was also inadequate. See Amwest, 28 F.3d at 697 (stating "before the district director can notify the claimant of any inadequacies, it is first necessary that the district director actually received the request.").